## MEMORANDUM DECISION

Pursuant to Ind. Appellate Rule 65(D), this Memorandum Decision shall not be regarded as precedent or cited before any court except for the purpose of establishing the defense of res judicata, collateral estoppel, or the law of the case.



FILED

Mar 11 2019, 8:38 am

CLERK
Indiana Supreme Court
Court of Appeals
and Tax Court

ATTORNEY FOR APPELLANT

Daniel Hageman
Indianapolis, Indiana

ATTORNEYS FOR APPELLEE

Curtis T. Hill, Jr.
Attorney General of Indiana

Laura R. Anderson
Deputy Attorney General
Indianapolis, Indiana

# IN THE
# COURT OF APPEALS OF INDIANA

Austin Stevens,
*Appellant-Defendant,*

v.

State of Indiana,
*Appellee-Plaintiff.*

March 11, 2019

Court of Appeals Case No.
18A-CR-1246

Appeal from the Marion Superior Court

The Honorable Steven J. Rubick, Judge Pro-Tempore

Trial Court Cause No.
49G10-1801-CM-2344
49G10-1802-CM-4538

**Tavitas, Judge.**

# Case Summary

In this consolidated appeal, Austin Stevens appeals his convictions, following separate bench trials, for two counts of invasion of privacy, as Class A misdemeanors. We affirm in part and reverse in part.

# Issue

The sole issue on appeal is whether sufficient evidence supports Stevens' convictions.

# Facts

Stevens and A.H. began dating in May 2017. On July 10, 2017, Stevens and A.H. were involved in a domestic battery incident in Speedway, Indiana. Stevens was subsequently charged with various offenses stemming from the incident.

On August 2, 2017, A.H. filed a petition for an order of protection in which A.H. described Stevens' acts of violence against her.[1] *See* Cause 2344 Exhibits Vol. III pp. 6-7. Stevens committed two of the three violent acts at his residence which is located at 928 River Ave, Indianapolis, Indiana. On August 3, 2017, a magistrate judge entered an ex parte order of protection ("August 2017 protective order"), which was to remain in effect through August 3, 2019.

---

[1] A.H. reported that Stevens broke into her apartment and damaged her television; choked her and left bruises on her arms; and pulled a gun on her and threatened to shoot her.

Pursuant to the August 2017 protective order, Stevens was prohibited from "annoying, contacting directly or indirectly, [or] communicating with" A.H. Cause 2344 Tr. Vol. II p. 24. The protective order was issued without notice to Stevens and, accordingly, Stevens was not present when the magistrate judge issued the August 2017 Protective Order.

[5] On August 8, 2017, a sheriff's deputy of the Marion County Sheriff's Department left a copy of the August 2017 Protective Order at Stevens' known address, 928 River Ave #B, Indianapolis, IN 46221, as identified by A.H. The "Marion County Sheriff's Department['s] Return of Service" bears "X" notations indicating that: (1) a copy of the August 2017 Protective Order was left at 928 River Ave #B, Indianapolis, Indiana, by a Marion County sheriff's deputy; and (2) a copy of the August 2017 Protective Order was also mailed to the same address. *See* Cause 2344, Exhibits Vol. III p. 17. The return of service does not indicate that service was made upon Stevens in person; however, the State contends otherwise.

[6] Pursuant to a plea agreement, Stevens was convicted of domestic battery, a Level 6 felony, in Cause Number 49G16-1708-F6-28164 for certain acts alleged within A.H.'s petition for protective order. On October 12, 2017, Stevens was sentenced to ninety days in jail.[2] That same day, a judge entered a no contact

---

[2] *See* Cause 4538 Tr. Vol. II p. 21 (providing that Stevens was sentenced to "one [hundred] eighty (180) do ninety (90) in jail"). Stevens received jail time credit for fifty-seven days and was required to serve an additional thirty-three days to complete his ninety-day executed sentence.

order ("DB Order") that barred Stevens from contacting A.H. while Stevens was on probation and/or during the time that Stevens was serving his executed sentence. Stevens was incarcerated until November 11, 2017.[3] *See* Cause 4538 Tr. Vol. II p. 28.

[7] On November 29, 2017, Stevens contacted A.H. on Facebook and stated: "Just thought I'd let you know I apologize again about everything and hope things are good with you [for real for real] . . . . take it easy gorgeous." Cause 2344 Tr. Vol. II p. 7; *see* Cause 2344 Exhibits Vol. III p. 22. A.H. was "[s]cared" to hear from Stevens; she captured cell phone images or screenshots of Stevens' message(s) and notified the Speedway Police Department. Cause 2344 Tr. Vol. II p. 13.

[8] On December 9, 2017, Detective Lauren Roemke interviewed A.H. A.H. told Detective Roemke that the August 2017 Protective Order was in effect[4] and she showed Detective Roemke the screenshots of Stevens' messages. On December 20, 2017, Stevens sent a Facebook "friend request" to A.H. Cause 2344 Tr. Vol. II p. 8. That same day, Detective Roemke interviewed Stevens, who was incarcerated in a community corrections facility. Stevens admitted that he had contacted A.H. and stated that he believed that the only protective order in force was the DB Order, which had become invalid once Stevens completed his

---

[3] The State did not present evidence as to whether Stevens returned to and/or continued to reside in the 928 River Avenue #B, Indianapolis, Indiana address after he was released from jail.

[4] A.H. did not present Detective Roemke with documentation of the August 2017 Protective Order.

sentence for domestic battery on November 11, 2017. *Id*. at 17. Detective Roemke advised Stevens not to contact A.H. Detective Roemke later located documentation of the August 2017 Protective Order after she spoke to Stevens.

[9] On January 19, 2018, Stevens "messaged [A.H.] a bunch of times on Facebook [ ] and just wanted to talk." Cause 4538 Tr. Vol. II p. 4. A.H. again captured screenshots of most of Stevens' eight messages; however, because Stevens sent the messages using Facebook's "secret message" feature, "after [A.H.] open[ed] [some] message[s] and read [them], [they] disappear[ed] after ten (10) seconds"; and "[s]o the first couple of messages [Stevens] sent [A.H.], [A.H.] did not get to save[.]" Cause 4538 Tr. Vol. II p. 7. A.H. contacted Detective Roemke and shared the new screenshots. Detective Roemke confirmed that the August 2017 protective order was still in effect after speaking with Stevens. A.H. did not want or solicit Stevens' contact.

[10] Stevens' January 19, 2018 messages included the following: (1) "What's up gorgeous wish you weren't so spiteful so I could talk to you for a sec"; (2) "If so call me if not ain't trippin seen ya W ya boy at Applebees"; (3) two messages that provided "a cell phone number [Stevens] wanted [A.H.] to contact him on"; and (4) "Tryin hard girl guess you ain't [f***** with me] take it easy

lol[.]" Cause 4538 Tr. Vol. II pp. 8, 11; State's Exhibits 6, 7.[5] Seven of the eight messages were sent within a fifteen-minute span.

[11] On January 22, 2018, the State charged Stevens with invasion of privacy in Cause 49G10-1801-CM-2344 ("Cause 2344") for violating the protective order by contacting A.H. on November 29 and December 20, 2017. On February 7, 2018, the State charged Stevens with invasion of privacy in Cause 49G10-1802-CM-4538 ("Cause 4538") regarding Stevens' further contact with A.H. on January 19, 2018. The trial court conducted separate bench trials on May 4, 2018.

[12] At Stevens' trial in Cause 2344, A.H. and Detective Roemke testified to the foregoing facts relating to Stevens' Facebook contact with A.H. on November 29 and December 20, 2017. Detective Roemke also testified that she did not find the August 2017 protective order until after she spoke with Stevens, due to a clerical error, but that she had advised Stevens not to contact A.H. The trial court found Stevens guilty of invasion of privacy, a Class A misdemeanor.

[13] In the trial for Cause 4538, the trial court granted the State's request to incorporate the witnesses' testimony from Cause 2344. A.H. and Detective Roemke testified to the foregoing facts stemming from Stevens' contact with A.H. on January 19, 2018. Additionally, Detective Roemke testified that her

---

[5] The State introduced images of the captured Facebook messages or time and date data for the Facebook messages that disappeared.

"recollection" was that a sheriff's deputy left the August 2017 protective order with Stevens in person at his known residence. Cause 4538 Tr. Vol. II p. 18. The sheriff's return of service, however, does not reflect in-person service upon Stevens.

[14] Stevens testified that he did not reside at "928 River Ave #B, Indianapolis, IN 46221" when the copy of the August 2017 protective order was left there on August 8, 2017 because he was incarcerated at a community corrections facility when the August 2017 protective order was entered. *See* Cause 4538 Tr. Vol. II p. 21. Stevens testified that, to his knowledge, the only protective order that was in effect when he contacted A.H. was the DB Order, which "ceased to exist" after he served his executed sentence. *Id.* Stevens also testified that Detective Roemke told him, "I would advise you not to reach out to [A.H.]. But I have to check and find out . . . if there's [sic] any no contact orders still in place[.]" *Id.* at 23.

[15] At the close of the evidence in Cause 4538, the trial court found Stevens guilty. That same day, the court sentenced Stevens as follows: Cause 2344 – ninety days in jail; and Cause 4538 – 180 days in jail. The trial court ordered the sentences to be served consecutively. Stevens now appeals.

## Analysis

[16] Stevens argues that the evidence is insufficient to support his convictions. When there is a challenge to the sufficiency of the evidence, "[w]e neither reweigh evidence nor judge witness credibility." *Gibson v. State*, 51 N.E.3d 204,

210 (Ind. 2016) (citing *Bieghler v. State*, 481 N.E.2d 78, 84 (Ind. 1985)).  Instead, "we 'consider only that evidence most favorable to the judgment together with all reasonable inferences drawn therefrom.'"  *Id*. (quoting *Bieghler*, 481 N.E.2d at 84).  "We will affirm the judgment if it is supported by 'substantial evidence of probative value even if there is some conflict in that evidence.'"  *Id*.; *see also McCallister v. State*, 91 N.E.3d 554, 558 (Ind. 2018) (holding that, even though there was conflicting evidence, it was "beside the point" because that argument "misapprehend[s] our limited role as a reviewing court").  Further, "[w]e will affirm the conviction unless no reasonable fact-finder could find the elements of the crime proven beyond a reasonable doubt."  *Love v. State*, 73 N.E.3d 693, 696 (Ind. 2017) (citing *Drane v. State*, 867 N.E.2d 144, 146 (Ind. 2007)).

[17]   Stevens argues that he did not knowingly violate the protective order because he was incarcerated when copies of the protective order were left at and mailed to his last known address.[6]  To convict Stevens of each count of invasion of privacy, a Class A misdemeanor, the State had to prove, beyond a reasonable doubt, that: (1) on November 29 and December 20, 2017, and (2) on January 20, 2018, Stevens knowingly or intentionally violated a protective order to prevent domestic or family violence issued under Indiana Code Chapter 34-26-5.  Ind. Code § 35-46-1-15.1(2).  A person engages in conduct "knowingly" if,

---

[6] Stevens also asserts that service was defective because service was made at "928 River Ave #B, Indianapolis, IN 46221" -- and not "928 River Ave, Indianapolis, IN 46221" -- as the protective order provided.  As the State counters, however, Stevens conceded at trial that 928 River Avenue was his address or usual place of abode when he contended that he did not reside there on the date of service because he was incarcerated.  We do not address this aspect of his claim further.

when he engages in the conduct, he is aware of a high probability that he is doing so. I.C. § 35-41-2-2(a).

[18] The State is not required to prove that a respondent was actually served with a protective order. *See Joslyn v. State,* 942 N.E.2d 809, 811-12 (Ind. 2011) (holding that proper service of an ex parte order is not required to prove that a respondent has knowledge of the order). It is sufficient for the State to prove that the respondent had knowledge of the protective order and adequate indication of its terms. *Tharp v. State,* 942 N.E.2d 814, 818 (Ind. 2011).

[19] Here, Stevens testified that he was incarcerated in a community corrections facility when the August 2017 Protective Order was entered on August 2, 2017, and when copies were left at and mailed to his address on August 8, 2017. Although Detective Roemke testified that a sheriff's deputy served the August 2017 Protective Order upon Stevens in person on August 8, 2017, the sheriff's return of service indicates only that a copy of the protective order was left at Stevens' address. The designated signature line for the "recipient" is blank. *See* Cause 2344, State's Exhibit 1 p. 17.

[20] As to Cause 2344, considering only the evidence most favorable to the judgment and all *reasonable* inferences therefrom, we cannot say that no reasonable factfinder could find the elements of the crime proven beyond a reasonable doubt. Although there is no dispute that service was properly made pursuant to Indiana Trial Rule 4.1(A)(3)(B), we elect to give Stevens the benefit of the doubt here. We decline to impute to Stevens knowledge of the August

2017 protective order and adequate indication of its terms where Stevens asserts and the evidence indicates—*and the State does not dispute*—that Stevens was incarcerated when service was made at his residence. Under the unique circumstances before us, we cannot agree with the State's contention that "such [Indiana Trial Rule 4.1(A)(3)(B)[7]] service allows the reasonable inference that [Stevens] had knowledge of the protective order and its prohibition[s]." *See* Appellee's Br. p. 9.

[21] Because we find that the State failed to prove, beyond a reasonable doubt, that Stevens had knowledge of the August 2017 protective order and adequate indication of its terms, we conclude that there is insufficient evidence to prove that Stevens knowingly and intentionally violated the August 2017 protective order when he contacted A.H. on November 29, 2017, and December 20, 2017. Accordingly, as to Cause 2344, we reverse the trial court's order of conviction and remand with instructions to vacate the judgment.

[22] As to Cause 4538, we initially note that we cannot judge the credibility of the witnesses from a cold record. Having heard the testimony and observed the demeanor of the witnesses, the trial court here concluded that Stevens had

---

[7] Pursuant to Indiana Trial Rule 4.1(A)(3)(B), service may be made upon an individual by leaving a copy of the document at the individual's dwelling house or usual place of abode and by mailing a copy to the individual's last known address.

knowingly and intentionally violated the August 2017 protective order when Stevens contacted A.H. on January 19, 2018.

[23] At trial, the State presented evidence that Detective Roemke: (1) interviewed Stevens on December 20, 2017; (2) told Stevens that A.H. had reported Stevens' unwelcome attempts to contact A.H.; (3) told Stevens that A.H. claimed that Stevens had violated a protective order by contacting her; and (4) warned Stevens against contacting A.H. At a minimum, Detective Roemke's December 20, 2017, visit put Stevens on notice regarding the protective order. Despite being cautioned by Detective Roemke, Stevens sent eight Facebook messages – including seven messages within a fifteen-minute span – to A.H. on January 19, 2018.

[24] Based on the foregoing, and considering only the evidence most favorable to the judgment and all *reasonable* inferences therefrom, we find that Stevens knowingly and intentionally violated the August 2017 protective order and had adequate indication of its terms when he contacted A.H. on January 19, 2018. *See Tharp*, 942 N.E.2d at 818.

# Conclusion

[25] We find that sufficient evidence exists to support Stevens' convictions for one count of invasion of privacy, a Class A misdemeanor, in Cause 4388; however, the evidence was insufficient to convict him of the same offense in Cause 2344. Accordingly, we reverse and vacate Stevens' conviction and sentence in Cause 2344. Our ruling does not affect the August 2017 Protective Order, which

remains in effect through August 3, 2019, and of which Stevens is now undeniably aware. We affirm in part and reverse in part.

[26] Affirmed in part and reversed in part.

[27] Baker, J., and May, J., concur.